UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:20-CV-00068-HBB

**JUDITH STEWART**                                                                               **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                   **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Judith Stewart ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 14) and Defendant (DN 15) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12). By Order entered November 13, 2020 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

On August 26, 2010, Plaintiff filed an application for Disability Insurance Benefits alleging her disability began November 13, 2009 (Tr. 73). Following an administrative hearing, Administrative Law Judge Kathleen M. Thomas ("ALJ Thomas") issued a partially favorable decision dated February 15, 2013 (Tr. 73-84). Specifically, ALJ Thomas found Plaintiff was under a disability, as defined by the Social Security Act, from November 13, 2009 through March 28, 2011 due to severe limitations from a nondisplaced fracture involving the distal third of the left ulna that precluded Plaintiff from using her left arm/hand, which is her dominant upper extremity (Tr. 76-81, Finding Nos. 3, 5, 6-11).[1] However, ALJ Thomas determined that Plaintiff's disability ended on March 29, 2011, as a result of medical improvement related to Plaintiff's left upper extremity (Tr. 81-84, Finding Nos. 12-18). ALJ Thomas explained due to this medical improvement Plaintiff's RFC increased to a level where she is capable of performing her past relevant work as a mortgage associate mail clerk and phone operator (Id.).[2]

On July 11, 2017, Plaintiff protectively filed applications for Disability Insurance Benefits (Tr. 15). Plaintiff alleged that she became disabled on March 29, 2011, as a result of post-traumatic carpal tunnel syndrome, sleep apnea, chronic obstructive pulmonary disorder (COPD),

---

[1] At step two, ALJ Thomas found that Plaintiff had the following severe impairments: obesity and residuals from a broken left arm/hand (Tr. 76, Finding No. 3). At step four, ALJ Thomas determined from November 13, 2009 through March 28, 2011, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work activity, but Plaintiff was precluded from using her left arm/hand, which was her dominant upper extremity (Tr. 77, Finding No. 5). ALJ Thomas concluded from November 13, 2009 through March 28, 2011, Plaintiff was unable to perform any past relevant work and there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed (Tr. 80-81, Finding Nos. 6-10).

[2] ALJ Thomas found beginning March 29, 2011, Plaintiff had the RFC to perform light work except she can frequently use her dominant upper extremity; she can occasionally climb ladders, ropes, and scaffolds; and she can occasionally crawl (Tr. 81, Finding No. 16).

emphysema, aortic stenosis, congestive heart failure, shortness of breath, and possible fibromyalgia (Tr. 15, 230). Administrative Law Judge David Peeples ("ALJ Peeples") conducted a video hearing from Paducah, Kentucky (Tr. 15, 34). Plaintiff and her counsel, Sara J. Martin Diaz, participated from Owensboro, Kentucky (Id.). Kenneth Boaz, an impartial vocational expert, testified during the hearing (Id.). During the hearing, Plaintiff amended the alleged onset date to February 16, 2013 (Tr. 15). This amended date coincides with the day after the rendition date of ALJ Thomas's decision (Id.).

In a decision dated March 13, 2019, ALJ Peeples evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-23). ALJ Peeples noted that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2016 (Tr. 17). At the first step, ALJ Peeples found Plaintiff has not engaged in substantial gainful activity since February 16, 2013, the amended alleged onset date (Tr. 18).

At the second step, ALJ Peeples determined that through the date last insured Plaintiff has the following severe impairments: congestive heart failure and obesity (Id.). ALJ Peeples found that through the date last insured Plaintiff has the following "non-severe" impairments: residuals from a broken left arm/hand; carpal tunnel syndrome involving the left wrist; ganglion cyst on the left wrist; degenerative disc disease of the lumbar and cervical spine; obstructive sleep apnea (Tr. 18-19). ALJ Peeples also determined that through the date last insured the medical records indicate Plaintiff's fibromyalgia was not a medically determinable impairment (Tr. 19). At the third step, ALJ Peeples concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, ALJ Peeples found through the date last insured Plaintiff had the RFC to perform a range of light work because she could occasionally climb ramps and stairs; she could never climb ladders, ropes, and scaffolds; she could occasionally stoop, kneel, crouch, and crawl; and she should avoid concentrated exposure to extreme cold, extreme heat, vibration, and workplace hazards such as unprotected heights and moving mechanical parts (Tr. 20). ALJ Peeples relied on testimony from the vocational expert to find through the date last insured Plaintiff was capable of performing her past relevant work as a correspondence clerk (Tr. 22). Therefore, ALJ Peeples concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from the amended alleged onset date of February 16, 2013 through the date last insured of March 31, 2016 (Tr. 23).

Plaintiff timely filed a request for the Appeals Council to review ALJ Peeples's decision (Tr. 191). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a

case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of ALJ Peeples's decision (Tr. 1-4). At that point, ALJ Peeples's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing ALJ Peeples's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

Finding No. 3

1. Arguments of the Parties

Plaintiff points out the only impairments the ALJ classified as severe were her obesity and congestive heart failure (DN 14; DN 14-1 PageID # 2313-16). Plaintiff contends "[t]his is clear error" because the medical evidence and her testimony shows her hand/arm/leg pain and back conditions are also severe impairments (Id.). In an effort to demonstrate prejudice, Plaintiff asserts the ALJ's failure to properly assess her impairments "resulted in an improper RFC that did not place any restrictions on the use of her extremities and that was completely devoid of any analysis of potential limitations to her RFC based on these impairments" (Id.).

Defendant argues the ALJ considered the medical and testamentary evidence regarding Plaintiff's hand and arm impairments and reasonably concluded they were non-severe impairments from February 16, 2013 through Plaintiff's date last insured, March 31, 2016 (DN 15 PageID # 2324-26, citing Tr. 18-19).[3] Defendant asserts the ALJ concluded the objective evidence did not support a finding that Plaintiff had a severe back impairment (Id. PageID # 2326-28). Regarding the foot problems and heel pain, Defendant contends the treatment notes cited by Plaintiff merely show these conditions have existed on and off for many years but do not demonstrate they prevented her from performing her past relevant work between February 2013 and March 2016 (Id. citing Tr. 365, 695).

2. Discussion

The Court will begin with Plaintiff's use of the "clear error" standard in her argument (*see* DN 14; DN 14-1 PageID # 2313-16). The "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed. *See* Fed. R. Civ. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); Mitchum v. Saul, No. 2:19-CV-02533-JPM-dkv, 2020 WL 1493482, at *1 (W.D. Tenn. March 27, 2020); Samona v. Comm'r of Soc. Sec., No. 15-CV-11713, 2018 WL 2159893, at *1 (E.D. Mich. May 10, 2018). The "clear error" standard also applies when a party moves a district court to alter or amend its judgment under Fed. R. Civ. P.

---

3 Defendant points out that the ALJ explained the November 2018 functional capacity evaluation was "not particularly useful or relevant given its significant temporal distance from the date last insured" (DN 15 PageID # 2324-26, citing Tr. 22). Additionally, the Defendant asserts that the treatment notes cited by Plaintiff fail to support her claim (Id.).

59(e). See Moore v Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018). Neither situation exists here. Instead, Plaintiff is utilizing the "clear error" standard in his challenge of the final decision of the Commissioner (DN 1). But the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied. See 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)). Thus, the Court declines Plaintiff's invitation to apply the "clear error" standard.

At the second step in the sequential evaluation process a claimant must demonstrate she suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ." 20 C.F.R. § 404.1520(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" her physical or mental ability to do "basic work activities." 20 C.F.R. § 404.1522(a).

Plaintiff cites her own testimony, medical records, and a functional capacity evaluation ("FCE") dated November 30, 2018 in support her claim that the ALJ erred in failing to find that her left upper extremity (wrist and finger) pain and neuropathy, related to left cubital tunnel and carpal tunnel syndrome, is a severe impairment (DN 14-1 PageID # 2313-16, citing Tr. 50, 56, 803). Plaintiff asserts that the FCE indicated she would only be able to use her hands and fingers

20% of the time in an eight-hour workday and only be able to use her arms for reaching for 10% of an eight-hour workday (Id. PageID # 2314, citing Tr. 2238).

In relevant part ALJ Peeples's decision reads:

> In addition, the undersigned notes that "residuals from a broken left arm/hand" was included along with obesity in the severe impairments finding in the last hearing level decision, which was rendered on February 15, 2013. At the hearing in this case, it was asserted that the claimant continued to have significant difficulty using her left upper extremity. However, *the weight of the objective evidence does not seem to reasonably support the claimant to have had a severe left upper extremity disorder between the amended alleged onset date and the date last insured.* The claimant has been reported to have a history of carpal tunnel syndrome. Yet, earlier electrodiagnostic testing from February of 2011 just suggested the claimant to have only mild carpal tunnel syndrome involving the left wrist. (Exhibit B13F/8). More recently on July 19, 2017, this appears to have been indicated to have been treated non-operatively. It was further reported on said date that the claimant was able to move her left wrist well with good intrinsic strength. (Exhibit B13F/4). The undersigned also notes that more recent electrodiagnostic testing from July of 2017 just reflected the claimant to have mild left ulnar neuropathy across the elbow. (Exhibit B37F/5). It too bears mention that the claimant was indicated to have a ganglion cyst on her left wrist before the date last insured on March 17, 2014. Notwithstanding, her wrist joint was documented to move smoothly at this time. (Exhibit B13F/7).

(Tr. 18). The above discussion indicates that ALJ Peeples considered the very medical and testamentary evidence cited by Plaintiff. ALJ Peeples provided good reasons for concluding the impairment was not severe from the amended alleged onset date of February 16, 2013 through the date last insured of March 31, 2016. Moreover, at a subsequent point in the decision, ALJ Peeples explained that he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms not entirely persuasive or consistent with the medical and other evidence in the record (Tr. 20). Additionally, ALJ Peeples considered the FCE that physical

therapist James Hawkins, Jr., conducted in November 2018 (Tr. 21-22). But ALJ Peeples found the FCE limiting Plaintiff to less than sedentary work "to be less than persuasive in this case" (Id.).[4] The ALJ noted that the FCE "dates from November 2018 and appears to be mainly premised on a functional capacity evaluation conducted at that time" (Tr. 22). Therefore, ALJ Peeples found the FCE "not particularly useful or relevant because of its significant temporal distance [more than two years] from the date last insured" which was March 31, 2016 (Tr. 22). In sum, contrary to Plaintiff's claim, substantial evidence in the record supports ALJ Peeples's conclusion that Plaintiff's left upper extremity (wrist and finger) pain and neuropathy is not a severe impairment.

Next, in an effort to demonstrate her back condition is a severe impairment, Plaintiff points out that x-rays[5] taken on July 31, 2017 show she suffers from moderate degenerative disc disease at L1-L2, L2-L3 and L5-S1, mild to moderate degenerative disc disease at L3-L4, L4-L5, mild to moderate facet joint arthritis at L4-L5 and L5-S1 (DN 14-1 PageID # 2313-16, citing Tr. 921).

---

4 The new regulations for evaluating medical opinions are applicable to Plaintiff's case because she filed her application after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," in the record, even if it comes from a treating medical source. 20 C.F.R. § 404.1520c(a). Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). Of these five factors, the two most important are supportability and consistency. 20 C.F.R. § 404.1520c(a) and (b)(2). Further, the regulation requires administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Notably, under the regulation administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

5 Plaintiff's memorandum indicates "MRI", not x-rays (DN 14-1 PageID # 2315, citing Tr. 921). The Court concludes this must be a typographical error as the radiology report indicates x-rays of Plaintiff's lumbar spine were taken on July 31, 2017 (Tr. 921).

Again, Plaintiff overlooks the fact that the ALJ considered these x-rays in conjunction with the results of a December 2017 nerve conduction study of Plaintiff's left lower extremity, the results of a physical examination on November 22, 2017, and other medical records in assessing whether Plaintiff had a severe back impairment from the amended alleged onset date of February 16, 2013 through the date last insured of March 31, 2016 (Tr. 18, citing 785, 921, 968, 1012, 2029, 2037). In sum, contrary to Plaintiff's claim, substantial evidence in the record supports ALJ Peeples's conclusion that Plaintiff does not have a severe spine disorder between the amended alleged onset date and the date last insured.

Plaintiff also points to a couple of treatment notes regarding her foot problems and heel pain (DN 14-1 PageID # 2315-16, citing Tr. 365, 695). Plaintiff asserts that ALJ Peeples should have found these conditions constitute severe impairments (Id.). However, the first treatment note cited by Plaintiff discusses conservative treatment for an ingrown toenail and right heel pain that she mainly experiences first thing in the morning (Tr. 365-67). The second treatment note cited by Plaintiff indicates she underwent a total permanent avulsion of the right great toenail to address her off and on problems with an ingrown toenail (Tr. 695). Giving Plaintiff the benefit of the doubt, the medical evidence may demonstrate the existence of two medically determinable conditions. However, the records fail to demonstrate these conditions satisfy both the "duration" and severity requirements at step two. Moreover, it does not appear that Plaintiff even asked the ALJ to consider her ingrown toenail and heel pain in conjunction with her disability claim (*see* Tr. 34-63, 230, 257-59, 283-91, 292-93). Thus, Plaintiff has not satisfied her burden of demonstrating her ingrown toenail and heel pain are severe impairments.

In sum, substantial evidence supports the ALJ's step two findings that Plaintiff's obesity and congestive heart failure are severe impairments but her left upper extremity disorder and spine disorder are nonsevere impairments (Tr. 18). Therefore, Plaintiff's challenges to these findings fail.

### Finding No. 5

1. Arguments of the Parties

Plaintiff claims there was not substantial evidence to support the ALJ's finding that Plaintiff's condition would allow her to perform light work (DN 14; DN 14-1 PageID # 2316-18). Plaintiff relies on the FCE dated November 30, 2018, her own testimony, and medical records regarding her heart condition to argue she should have been limited to less than sedentary work (Id. citing Tr. 58-59, 373, 1254, 1358, 2237-38). Plaintiff contends that none of the jobs cited by the vocational expert, nor Plaintiff's past relevant work, would allow for the flexibility of missing work two to four days per month as a result of her impairments or treatment and her needing to take unscheduled and unpredictable breaks throughout the work day (Id. citing Tr. 66, 2237-38).

Defendant asserts that substantial evidence supports the limitations set forth in ALJ Peeples's RFC (DN 15 PageID # 2323-30). The ALJ reasonably considered the evidence concerning Plaintiff's upper extremity, back, heart, and foot impairments and found that Plaintiff could perform a reduced range of light work during the relevant time frame (Id. citing Tr. 876, 937, 966, 968, 1010, 1012, 1233-34, 1529, 2012, 2045-46). Further, Defendant points out that ALJ Peeples gave good reasons for discounting the November 2018 FCE (Id.).

2. Discussion

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the RFC finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

As explained above, ALJ Peeples considered the FCE limiting Plaintiff to less than sedentary work and found it "to be less than persuasive in this case" (Tr. 21-22). The ALJ explained because the FCA "dates from November 2018 and appears to be mainly premised on a functional capacity evaluation conducted at that time" it was not particularly useful or relevant due to its more than two year temporal distance from March 31, 2016, the date last insured (Tr. 22). Contrary to Plaintiff's assertion, these findings are supported by substantial evidence and comport with applicable law. Thus, the first part of Plaintiff's claim is without merit.

Notably, the medical evidence Plaintiff cites concerning her heart condition is but a portion of the evidence that ALJ Peeples considered in assessing Plaintiff's RFC (*compare* DN 14-1 PageID # 2316-18 *and* Tr. 20-21). The ALJ's discussion of the evidence reads as follows:

> At the hearing, the claimant additionally suggested that her heart condition contributed to her being unable to work through the date last insured. Notwithstanding, the weight of the objective medical findings and treatment narrative does not reasonably support the claimant to have had an incapacitating degree of restriction on a sustained basis because of her heart condition or any other medical issues.

13

The undersigned observes the claimant to have a history of congestive heart failure. However, the claimant did not repeatedly require urgent treatment for cardiac-related symptoms on a monthly basis through the date last insured. She did have to be admitted to the hospital during February of 2016 because of her congestive heart failure and issues such as shortness of breath. (Exhibit B22F/64). This ultimately resulted in the claimant having to undergo another aortic valve replacement surgery, which was performed at Vanderbilt University by Michael R. Petracek, M.D., in February of 2016. Dr. Petracek had performed the claimant's original surgery in this regard in December of 2007. (Exhibit B5F/4, 13). This redo surgery appears to have been rather successful. On April 1, 2016, Dr. Petracek reported that the claimant was doing well, that her heart had good valve sounds, that she had no peripheral edema, and that her wounds were healing nicely. (Exhibit B19F/71). The subsequent treatment notes and cardiac diagnostic testing were also not overly remarkable on a consistent basis. For example, no abnormal findings were documented during an annual wellness examination conducted on April 30, 2018, and an echocardiogram from October of 2017 revealed a left ventricular ejection fraction of 73 percent. (Exhibits B26F/12; B34F/14). It too is notable that a cardiology record from May 7, 2018, reflected that the claimant's new bio-prosthetic aortic valve appeared to be functioning normally, and that the claimant had done remarkably well with no further complaints of chest discomfort, shortness of breath, or leg swelling. (Exhibit B36F/3-4).

The treatment notes and cardiac diagnostic testing were not overly remarkable on a consistent basis before the claimant's redo surgery either. For instance, on July 10, 2013, and July 9, 2014, the condition of the claimant's artificial heart valve replacement was noted to be stable and nonprogressive and that the claimant was tolerating her medications. (Exhibit B19F/161,205). Physical examination findings recorded on these dates demonstrated the claimant to have a normal heart rate and a regular heart rhythm with no edema. (Exhibit B19F/163,207). Physical examination findings recorded on February 10, 2015, similarly demonstrated the claimant to have a normal heart rate and a regular heart rhythm with no edema. (Exhibit B19F/132). Furthermore, an echocardiogram from January of 2016 revealed an estimated left ventricular ejection fraction of 55 to 60 percent. (Exhibit B22F/44-45). It is also noted that echocardiogram findings from April of 2014 reportedly revealed only mild to moderate concentric left ventricular

> hypertrophy with a normal ejection fraction. The claimant's mechanical prosthesis was reported to appear to be functioning well with no significant evidence of prosthetic stenosis. (Exhibit B22F/65). Given the above findings, the undersigned observes that aortic stenosis can clearly not be considered to be a severe impairment in this case.

(Id.). In sum, the above findings concerning Plaintiff's heart condition are supported by substantial evidence in the record and comport with applicable law.

For the above reasons, the ALJ's RFC determination is supported by substantial evidence in the record and comport with applicable law. Thus, there is no merit to Plaintiff's challenge to the RFC determination that she can perform a range of light work due to certain postural and environmental limitations (Tr. 20, Finding No. 5).

### Finding No. 6

1. Arguments of the Parties

Plaintiff challenges Finding No. 6 by pointing out that if the RFC had limited her to "occasionally" handling, fingering, and feeling with the dominant left upper extremity, the vocational expert's testimony shows she would be precluded from performing her past relevant work (DN 14; DN 14-1 PageID # 2311-13, 2318-19 citing Tr. 63-65). Plaintiff argues because the vocational expert identified only unskilled jobs she could perform with this additional limitation; she was entitled to a fully favorable GRID decision (Id.). Plaintiff contends it was clear error for the ALJ not to issue a fully favorable GRID decision in this case (Id.).

Defendant argues substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work (DN 15 PageID # 2331-32, citing Tr. 22-23). Defendant points out the vocational expert testified that an individual with Plaintiff's background and RFC could

perform Plaintiff's past relevant work as actually performed and as generally performed in the national economy (Id. citing Tr. 61-64). Defendant asserts the ALJ reasonably relied on this testimony and concluded that Plaintiff could perform her past relevant work at step four (Id.).

2. Discussion

As explained above, Plaintiff's use of the "clear error" standard in her argument is misguided because the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)). Thus, the Court declines to apply the "clear error" standard.

At step four, the claimant has the burden of showing an inability to return to any past relevant work, Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 19800), or to prove that a past job should not be considered relevant. Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 109-10 (6th Cir. 1989). As explained above, the ALJ's RFC determination is supported by substantial evidence in the record. As Plaintiff's argument depends on the Court reaching a different conclusion, her challenge to Finding No. 6 fails.

Notwithstanding, the ALJ's first hypothetical question accurately sets forth the limitations in the RFC finding (*compare* Tr. 20, Finding No. 5 *and* Tr. 64). The vocational expert's testimony in response to that hypothetical question indicates Plaintiff can perform her past relevant work as actually performed and as ordinarily required by employers throughout the national economy (Tr. 63-64). Furthermore, the ALJ's decision relied on the vocational expert's testimony in explaining why, from the amended alleged onset date through the date last insured, Plaintiff with this RFC

can perform the demands and duties of her past relevant work as actually performed, or as ordinarily required by employers throughout the national economy (Tr. 22-23). Therefore, Finding No. 6 is supported by substantial evidence in the record and comports with applicable law. *See* Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. (Id.). After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenge.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

January 22, 2021

*[signature: H. Brent Brennenstuhl]*

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies: Counsel